# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 12, 2010

No. 09-30891
Summary Calendar

Lyle W. Cayce
Clerk

THEODORE KNATT,

      Plaintiff - Appellee

v.

HOSPITAL SERVICE DISTRICT NO. 1 OF EAST BATON ROUGE PARISH, doing business as Lane Memorial Hospital; HERBERT C OWEN, JR., Individually and in their capacity as the Board of Commissioners of Lane Memorial Hospital; NICK F ADAMS, Individually and in their capacity as the Board of Commissioners of Lane Memorial Hospital; ETTA K HEARN, Individually and in their capacity as the Board of Commissioners of Lane Memorial Hospital; STEVE STEIN, Individually and in their capacity as the Board of Commissioners of Lane Memorial Hospital; CATHERINE A POURCIAU, Individually and in their capacity as the Board of Commissioners of Lane Memorial Hospital; ROBERT WILLIAMS, SR., Individually and in their capacity as the Board of Commissioners of Lane Memorial Hospital; RICHARD RATHBORNE, Individually and in their capacity as the Executive/Bylaws Committee of Lane Memorial Hospital; JUAN MEDINA, Individually and in their capacity as the Executive/Bylaws Committee of Lane Memorial Hospital; DONALD FONTE, Individually and in their capacity as the Executive/Bylaws Committee of Lane Memorial Hospital; A KEITH HEARTSILL, CPA, FHFMA, Individually and in his capacity as an Employee and Chief Financial Officer of Lane Memorial Hospital; TERRY WHITTINGTON, FACHE, Individually and in his capacity as an Employee and Chief Executive Officer of Lane Memorial Hospital; JENNIFER S JOHNSON, RN, MSHSA, Individually and in her capacity as an Employee and Chief Nursing Officer of Lane Memorial Hospital; KAREN REDMOND, R.N., Individually and in her capacity as an Employee of Lane Memorial Hospital; JEANNE PARTIN, R.N., Individually and in her capacity as Unit Director Employee of Lane Memorial Hospital; ELIZABETH FAYE POLLARD, L.P.N., Individually and in her capacity as an Employee of Lane Memorial Hospital; LAURA L PEEL, L.P.N., Individually and in her capacity as an Employee of Lane Memorial Hospital; KATHLEEN MATTHEWS,

No. 09-30891

Individually and in her capacity as an Employee of Lane Memorial Hospital; CLINO MELKER, CRNA, Individually and in her capacity as an Employee of Lane Memorial Hospital; JULIE W AUSTIN, Individually and in her capacity as an Employee of Lane Memorial Hospital; DENISE S DUNN, Individually and in her capacity as an Employee of Lane Memorial Hospital,

       Defendants - Appellants

------------------------------------------------------------------------------------

THEODORE KNATT,

       Plaintiff - Appellee

v.

HOSPITAL SERVICE DISTRICT NO. 1 OF EAST BATON ROUGE PARISH, a political subdivision of the Parish of East Baton Rouge, State of Louisiana, doing business as Lane Memorial Hospital

       Defendant - Appellant

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC Nos. 3:03-CV-442, 3:05-CV-351

---

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

    About fifteen years ago, Dr. Theodore Knatt began providing orthopedic surgery services to patients of Lane Memorial Hospital in Zachary, Louisiana. He struck out on his own in 2001 to develop a physician-owned surgical facility, but continued seeing patients at Lane. In 2002, Lane summarily suspended Knatt from medical staff privileges for twenty-one days. These privileges were later reinstated, and the summary suspension was removed from his record.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

In 2003, Knatt filed the first of two lawsuits against Lane and several of its agents and employees in state court, asserting eleven claims that arose out of the events leading up to his suspension, including claims under the Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA).[1] The defendants removed the case to federal court pursuant to 28 U.S.C. § 1441(c), which allows removal of an "entire case" when it includes at least one claim over which the federal district court has original jurisdiction.[2] Knatt later attempted to amend his complaint to allege a conspiracy to destroy his business by constructively evicting him from office space that he leased from Lane. The district court denied the motion to amend and Knatt instead filed a second lawsuit in state court, alleging breach of contract, wrongful eviction, unfair trade practices, and discrimination. The defendants removed this action, too, and the district court consolidated Knatt's lawsuits into one. Then, in a series of decisions, the district court dismissed all of Knatt's claims except three state-law contract and tortious interference claims, which it remanded to state court.

In two opinions—in 2008 and 2009[3]—we affirmed these dismissals save for Knatt's LUTPA claims, which we sent back to the district court for consideration along with the other remaining state-law claims. We reasoned:

> The application of LUTPA to all of the defendants . . . presents difficult issues of state law. As we uphold summary judgment on all of Knatt's federal claims, only state law claims remain. We therefore vacate the district court's dismissal of Knatt's LUTPA claims and remand for reconsideration to determine if, in comity, the district court should decline to exercise jurisdiction over these claims.[4]

---

[1] LA. REV. STAT. ANN. § 51:1401, *et. seq.*, and 42 U.S.C. §§ 1983 and 1985.

[2] 28 U.S.C. § 1441(c).

[3] *Knatt v. Hosp. Serv. Dist. No. 1 of East Baton Rouge Parish* (*Knatt II*), 327 F. App'x 472 (5th Cir. May 12, 2009) (unpublished); *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish* (*Knatt I*), 289 F. App'x 22 (5th Cir. July 24, 2008) (unpublished).

[4] *Knatt II*, 327 F. App'x at 480.

And, though we found "no error or abuse of discretion in the district court's remand" of the remaining state-law claims to state court, we vacated that remand order and instructed the district court to take up the issue again. This time the district court was to "consider all of the state law claims together, including the . . . LUTPA claim."[5]

So, left without a single federal claim despite several years in the federal system, Knatt moved for remand to state court. The district court, disagreeing with a magistrate's recommendation, granted the motion and the defendants now appeal that order, seeking to keep Knatt's lawsuit in federal court.

II

At the start, Knatt contends that we lack jurisdiction to consider the defendants' appeal altogether. He argues that the district court was obliged to remand the state-law claims to state court because it lacked subject matter jurisdiction over them and that we accordingly lack appellate jurisdiction to review the remand order.[6] Knatt is mistaken.

It is undisputed that when this case was removed to federal court, the district court had original jurisdiction over Knatt's federal claims, as well as supplemental jurisdiction over his state-law claims because they were "so related to claims in the action within such original jurisdiction that they form[ed] part of the same case or controversy under Article III of the United States Constitution."[7] The subsequent dismissal of all federal claims from Knatt's suit did not divest the district court of supplemental jurisdiction over the remaining

---

[5] *Id.* at 487.

[6] *See* 28 U.S.C. §§ 1447(c) and (d). *See also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, ___ U.S. ____, 129 S. Ct. 1862, 1866 (2009) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12 (1996)).

[7] *See* 28 U.S.C. § 1367(a).

state-law claims.[8]    Rather, the court retained its statutory supplemental jurisdiction over those claims and "[i]ts decision declining to exercise that statutory authority was not based on a jurisdictional defect but on its discretionary choice not to hear the claims *despite its subject-matter jurisdiction over them*."[9]

Our prior instructions in this case plainly contemplate that the district court would employ discretion in making a remand determination.[10] And on its face the district court's order is an exercise of discretion. Because the district court had jurisdiction and retained discretion to adjudicate the state-law claims, we have appellate jurisdiction to review its decision.

## III

Our review is for abuse of discretion[11] and is guided by the statutory factors set forth in 28 U.S.C. § 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity.[12] Section 1367 authorizes a court to decline supplemental jurisdiction over a state-law claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other

---

[8] *Carlsbad Tech.*, 129 S. Ct. at 1867.

[9] *Id.* (citing *Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997)) (emphasis added).

[10] *Knatt II*, 327 F. App'x at 480 (citing 28 U.S.C § 1367(c) and the discretionary factors of judicial economy, convenience, fairness, and comity).

[11] *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601–02 (5th Cir. 2009) (citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)).

[12] *Id.* (citing *Mendoza*, 532 F.3d at 346).

compelling reasons for declining jurisdiction."[13]   These interests are to be considered on a case-by-case basis and no single factor is dispositive.[14]

## A

In this case, section 1367's first and third factors weigh in favor of declining jurisdiction. In fact, when a district court eliminates all federal claims before trial—as the district court did in this case—the "general rule" is that it should then decline to exercise jurisdiction over any remaining state-law claims.[15]  That said, "this rule is neither mandatory nor absolute,"[16] and here there are other relevant concerns that we must address.

## B

Most compelling in favor of remand to state court is the presence of a "novel and complex issue of state law" involving LUTPA.[17]  As we noted, a previous panel of this court has already explained that LUTPA's application to the facts of this case "presents difficult issues of state law" because it continues to divide Louisiana appellate panels, without resolution from the state's high

---

[13] 28 U.S.C. § 1367(c).

[14] *Brookshire Bros.*, 554 F.3d at 602.

[15] *Id.*

[16] *Id.*

[17] 28 U.S.C. § 1367(c). *Compare Parker v. Parsley Petroleum Co. v. Dresser Indus. Co.*, 972 F.2d 580, 587 (5th Cir. 1992) (reversing the district court's decision to retain supplemental jurisdiction in part because the remaining state issues were difficult), *with Brookshire Brothers*, 554 F.3d at 602 (explaining that "the remaining state-law issues in this case do not appear to be particularly novel or complex" and then deciding to retain federal jurisdiction), *Smith v. Amedisys, Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (affirming the district court's decision to retain supplemental jurisdiction because the remaining issues were not complex), *and Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 308 (5th Cir. 1991) (approving of the district court's decision to retain supplemental jurisdiction even though "the matters remaining in this lawsuit are solely questions of state law" because they "present no novel or especially unusual questions").

court.[18]    More specifically, although "Knatt argues that all of the other defendants were co-conspirators with [the hospital], and that he has standing to sue them," Louisiana courts "are split over whether co-conspirators may be sued under LUTPA."[19]  The defendants have put forth no convincing argument to the contrary.

## C

Without support from section 1367, then, the defendants turn to the common law, urging that adjudication of the remaining state claims in federal court will best serve the interests of judicial economy, convenience, and fairness. In support, they point to the fact that the parties have produced "over 7000 pages of discovery" and deposed twenty-nine witnesses.  It is true that "the amount of judicial resources that the case has consumed" is relevant to our analysis, but that accounting is "most important . . . as an indication of the familiarity of the forum with the case and its ability to resolve the dispute efficiently."[20]  And here, despite the magistrate judge's involvement in overseeing discovery, "there is no indication that the *district judge* ha[s] substantial

---

[18] *Knatt II*, 327 F. App'x at 480.

[19] *Id.  Compare Vermilion Hosp., Inc. v. Patout*, 906 So.2d 688, 692 (La. App. 3d Cir. 2005) (not allowing conspirators to be sued), *with Strahan v. State*, 645 So.2d 1162, 1165 (La. App. 1st Cir. 1994) (holding that the state, a non-competitor, could be sued for conspiring with a competitor), *and S. Tool & Supply, Inc. v. Beerman Precision, Inc.*, 862 So.2d 271, 276 (La. App. 4th Cir. 2003) (finding that a supplier was liable to a distributor for "acting in concert" with two other distributors).

[20] *Parker*, 972 F.2d at 587.  *See also Waste Sys., Inc. v. Rollins Envtl. Servs., Inc.*, 683 F.2d 927, 928 (5th Cir. 1982) ("[T]here are no compelling reasons of judicial efficiency and economy justifying the district court's retention of jurisdiction.  The action has not been tried. The issues involve complex problems of Louisiana law best suited for decision by a Louisiana court.  Despite the age of the case, little litigation progress has been made.  Whatever discovery has been accomplished can be preserved for use in state court.  Under these circumstances . . . it would be an abuse of that discretion for a federal court to exercise it.").

familiarity with the merits of the case."[21]  The parties have not yet filed motions *in limine*, the district court has not ruled on the admissibility of any significant amount of evidence, the parties have yet to brief the remaining state law issues on the merits, and no trial date has been set.[22]  As the district court put it, the case—whittled to the few remaining state claims—has "only recently 're-started'" and "trial is not imminent." Nor do the defendants contend that the discovery conducted in federal court will be unusable in subsequent state proceedings.[23]

## D

Finally, the defendants argue that maintenance in federal court is appropriate because they may benefit from a federal defense.  In particular, the defendants contend that they are each entitled to qualified immunity under the federal Health Care Quality Improvement Act (HCQIA).[24]  Because the willingness of medical professionals to review the performance of their peers is essential to policing the quality of health care in this country, HCQIA grants

---

[21] *Id.* (emphasis added).

[22] This situation is very different from the one we examined in *Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009).  In that case, we held that the district court had abused its discretion in remanding state-law claims to state court after those claims spent three years in federal court.  *Id.* at 603–04.  While Knatt and the defendants here have been in federal court for longer, the litigation in *Brookshire Brothers* proceeded at a much faster clip and with fewer interruptions.  *Id.* at 598.  There, the litigation "generat[ed] more than 1,300 entries in the district court docket," while the "district court decided forty-one dispositive motions, fourteen *Daubert* motions, and seven other motions *in limine*." *Id.*  Moreover, "[d]iscovery had closed and the parties were making final preparations for trial." *Id.*  Conversely in this case, discovery remains unfinished and the district court has not calendared a trial or decided any *Daubert* motions or motions *in limine*.  And, despite several years in district court, the case has generated fewer than 350 docket entries.

[23] *See Parker*, 972 F.2d at 587 (affirming the district court's remand of supplemental state claims where "the parties would not have to repeat the effort and expense of the discovery process" under Texas law); *Waste Sys., Inc.*, 683 F.2d at 931 (same under Louisiana law).

[24] 42 U.S.C. § 11101 *et seq.*

"limited immunity from suits for money damages to participants in professional peer review actions."[25]

Like the other claims remaining in this case, the parties did not brief the HCQIA issue in the district court, although the defendants now attempt to persuade us on appeal that the defense does indeed apply. It might, but without the benefit of a district court decision and briefing on the subject, we cannot be sure. For one, Knatt's remaining claims, though centered on the hospital's peer review that resulted in his summary dismissal, stretch beyond that review action—albeit somewhat marginally. It remains a possibility, then, that at least some of Knatt's factual allegations and claims fall outside the protection of the federal defense.

And, even if HCQIA could provide total resolution in this case, it would be odd to allow the mere potential for a federal defense to defeat the discretionary remand of state-law claims to a state court. The defendants do not contend that the Act falls under the complete preemption exception to the well-pleaded complaint rule and thus do not urge that it would have allowed them to remove the case to federal court in the first instance—rather than contest remand from federal court.[26] Although not a dispositive observation in this case, it is telling nonetheless.

All of this is to say that the district court will be no more familiar with the arguments associated with the defense than any given state court. For a court to decide the issue, more briefing and argument is required, regardless of venue.

---

[25] *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008) (quoting *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 632 (3d Cir. 1996)) (quotation marks omitted).

[26] *See Zamanian v. Christian Health Ministry*, No. 94-1781, 1994 U.S. Dist. LEXIS 10350 (E.D. La. 1994) (unpublished) (holding that HCQIA does not satisfy the complete preemption exception).

No. 09-30891

IV

After dismissing the claims that originally provided federal jurisdiction, the district court did not abuse its discretion in finding no compelling reason to maintain the dispute in the federal system.

AFFIRMED.